ROSA, DEMANDANTE Y APELADO, *v.* PAGÁN, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Arecibo en pleito sobre cobro de dinero.

No. 2715.—Resuelto en marzo 5, 1923.

REFACCIÓN Y COMPRAVENTA DE CAÑAS—CAUSA DE ACCIÓN—CUENTA CORRIENTE—PAGO.—Interpretando la cláusula 7ª. de un contrato de refacción y compraventa de cañas, estipulado por tres años, en la cual se convino que el acreedor refaccionario pagaría al colono "el 6½ por cada quintal de cañas que entregue y envagone en la·romana, las cuales cañas serán liquidadas al precio que pague la Central Cambalache semanalmente," se resolvió: que tal cláusula no tenía otro alcance sino fijar el precio que el demandante debía al demandado por las cañas que entregara cada semana a la Central, sin que en modo alguno pudiera considerarse esas liquidaciones semanales como una cuenta corriente, que en cualquier momento se liquidara a voluntad del demandante y exigir el cobro del saldo al demandado. Y se resolvió además: que el hecho de que el colono hubiera hipotecado la finca durante la vigencia del contrato no da derecho al acreedor para considerarlo terminado y reclamar el saldo insoluto antes del vencimiento estipulado.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. J. R. Aponte.*

Abogado del apelado: *Sr. L. Mercader.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del tribunal.

Esta es una acción personal en cobro de dinero, procedente de un contrato de refacción y compraventa de cañas.

En la demanda se alega como hecho esencial que "el demandado sostenía con el demandante una cuenta corriente para refacción en la siembra de cañas en finca que dicho demandado tiene en Hatillo, barrio Corcobadas, y en tal sentido·le tomaba dinero efectivo y otros efectos, la cual cuenta

liquidó el demandante en mayo 9, 1921, con un saldo a su favor de este por la suma de $767.29.''

El demandado niega en su contestación el hecho anterior, y alegó como defensa, la existencia de un contrato celebrado entre el demandante y demandado, consignado en documento privado, haciéndose constar entre otras condiciones, las siguientes:

''3. Sobre esta finca el colono tiene sembradas o se compromete a sembrar 18 cuerdas de cañas dulces de buena clase y se compromete formalmente, con el Sr. Lucas Rosa a venderle el importe total de quintales de cañas que produzca la indicada finca; comprometiéndose además, el colono a entregar por cuenta de Lucas Rosa sus cañas, después de cortadas y preparadas en buenas condiciones, bien maduras, sanas, frescas y libres de rabos, paja, vástagos y tierra a la Central Cambalache y en la romana más inmediata que tenga establecida dicha Central.

''4. Las cañas serán envagonadas por cuenta de * * * y arrastradas por cuenta * * * desde los desvíos de la Central.

''7. El Sr. Lucas Rosa se obliga a pagar al colono el 6½% por cada quintal de cañas que entregue y envagone en la romana, las cuales cañas serán liquidadas al precio que pague la Central Cambalache semanalmente.

''8. El colono mientras esté vigente este contrato, oblígase por el presente a no contraer compromisos con ninguna otra persona, corporación, etc., con relación a dicho contrato y al producto de las cuerdas de cañas aquí estipuladas.

''9. El término de este contrato es por tres años, a contar desde hoy día primero de mayo de 1920 al igual fecha de 1923.

''12. El Sr. Lucas Rosa se obliga a refaccionar al colono en proporción de $25 a $30 por cuerdas de cañas en buenas condiciones, a juicio del Sr. Lucas Rosa.

''13. El colono pagará al Sr. Lucas Rosa el interés del 12 por ciento anual, sobre la cantidad que anticipe a cuenta de cañas.

''15. Este contrato puede prorrogarse a gusto de las partes.''

El demandado además alega que el demandante le pasó con fecha 28 de abril de 1921 un estado o cuenta arrojando un saldo a favor de dicho demandante de $767.29, pero expone también que el referido contrato está en pleno vigor

no habiendo transcurrido el tiempo de tres años el día de la interposición de la demanda y no pudiendo hacerse liquidación final del mismo.

La corte inferior declaró con lugar la demanda, y en sus conclusiones para sostener su sentencia, en parte, dice:

"El demandado ha presentado como prueba en el juicio la cuenta fechada en 28 de abril de 1921, a él pasada por Lucas Rosa, el demandante, y a la cual nos hemos referido anteriormente, la cual arroja un saldo en su contra y a favor del demandante, por la suma de $726.73, reconociendo así, por tanto, la creencia del demandante y como consecuencia lógica e indestructible su obligación al pago de dicha cantidad; pretendiendo únicamente, suscitar la cuestión del no vencimiento del contrato, por no haber transcurrido los tres años que se fijaron como término.

"En dicho contrato de ventas de cañas, en su cláusula 7 dice: 'El Sr. Lucas Rosa se obliga a pagar al colono, (demandado), el seis y medio por ciento por cada quintal de cañas que entregue y envagone en la romana, las cuales cañas serán liquidadas al precio que pague la Central SEMANALMENTE."

"La cuenta del demandante, presentada y admitida, por el demandado, comprende todos los pagos semanales hechos por el demandante al demandado de acuerdo con lo anteriormente estipulado, y todas las entregas de cañas hechas por el demandado, durante el período de producción del fruto y safra, comprendido entre el 1 de mayo de 1920 en que se verificó el contrato y el 28 de abril de 1921 en que finalizó, con la cuenta producida por el demandante al demandado, y con un saldo a favor del primero de $726.73.

"En la transcrita cláusula 7 del contrato, se fijó la liquidación semanalmente, y así constan en la cuenta, diversas liquidaciones semanales, correspondientes al año 1920, a mayo 1921, resultando de las mismas, que el acreedor Lucas Rosa no ha sido íntegramente satisfecho del crédito refaccionario durante aquel tiempo de la administración, sostenimiento, cultivo de la finca y recolección de frutos, que comprende todo el plazo o período de la refacción, de acuerdo con la sección 1 de la Ley No. 37 de 1910 sobre contratos de refacción agrícola.

"La cláusula 7 del contrato, fija la forma de ir solventando el demandado su deuda en la cuenta de refacción, mediante abonos semanales de la caña vendida, obligándose a ello el demandado me-

diante la liquidación estipulada, liquidación que tratándose de refacción, significa pago.

"El demandado reconoce adeudar el saldo de $726.73, a favor del demandante y que aparece en la cuenta presentada por el propio demandado, y no existiendo plazo señalado para el pago del crédito de $726.73, antes expresado, y habiendo negado Pablo Pagán el pago del mismo, faltando así a la forma convenida de pagar su deuda por refacción, ha quedado constituido en la obligación de pagar a Lucas Rosa la mencionada cantidad de $726.73, que resulta adeudarle a la cuenta corriente de refacción.

"Las cuentas corrientes se entienden siempre liquidadas por depender su liquidación de una simple operación aritmética." Sentencia del Supremo de España de 2 de diciembre de 1887.

Se trata, según se desprende de la prueba, de un contrato de refacción y compraventa de cañas, y de la interpretación que debemos darle a dicho contrato en la cláusula novena, donde se estipula, que el término de duración es por tres años, a contar de su fecha.

La demanda no refiere que entre demandante y demandado se hubiese formalizado algún contrato por escrito y su principal objeto es el cobro del saldo de una cuenta corriente, que se considera debida y vencida por el solo hecho de haber sido liquidada por el acreedor. Del mismo modo, la sentencia de la corte inferior parece fundarse en igual teoría de la demanda, cuando establece la conclusión en relación con la cláusula 7ª. del contrato, de que una cuenta corriente se entiende siempre liquidada por depender su liquidación de una operación aritmética, y así no se le da valor alguno al término de tres años de la duración del contrato.

Por el contrato de refacción el demandante se obligó a hacer anticipos al demandado para la plantación y cultivo de 18 cuerdas de cañas; el montante de los avances se calcularon de $25 a $30 por cuerda o sea, un total máximo de $540, y además el dinero devengaría el interés del 12% anual. Al mismo tiempo quedaban vendidas las cañas al demandante para ser entregadas por su cuenta a la Central que se desig-

naba; se estipuló que el contrato duraba tres años, y se fijó el precio de compra de las cañas en la cláusula 7ª. que hemos insertado más arriba.

Por esta cláusula se determinó de una manera cierta el precio de las cañas. Ella significa de acuerdo con el uso corriente de esa clase de contratos que el demandado recibirá el valor de seis y media libras de azúcar por cada cien libras de cañas buenas y sanas; y como el valor del azúcar varía de un día para otro o de semana en semana, según las fluctuaciones del mercado, había que liquidar el precio que el demandado tenía que recibir por sus cañas en alguna forma, y una y otra parte escogieron fijarlo semanalmente al tipo que pagare un tercero, que en este caso era la central donde se molían las cañas contratadas. Así es que la cláusula 7ª. no tenía otro alcance sino fijar el precio que el demandante debía al demandado por los cañas que entregara cada semana a la central, sin que en modo alguno pudiera considerarse esas liquidaciones semanales como una cuenta corriente, que en cualquier momento se liquidara a voluntad del demandante y exigir el cobro del saldo al demandado.

El juez inferior sostiene sin embargo que dicha cláusula fija la forma de ir solventando el demandado su deuda en abonos semanales, de la caña vendida, obligándose a ello el demandado por la cuenta de refacción, mediante liquidación estipulada, liquidación que tratándose de refacción significa pago. Este es el error fundamental en este caso. Tal cláusula no tiene más significación que la de fijar el precio de las entregas de caña durante cada semana, operación que repitiéndose durante las semanas de las entregas, será la base para conocer el precio total de lo que había de satisfacer el demandante al demandado, y base así mismo, para poder el demandante descontar en la liquidación final del precio de compra las cantidades anticipadas al demandado en virtud del contrato de refacción, junto con los intereses que para este caso fueron pactados al 12 por ciento anual. En estas

condiciones, no estamos en la situación de una simple cuenta
corriente que se pueda entender liquidada cada semana y que
en tal sentido signifique pago. Esas liquidaciones son la
base del precio del azúcar para en su día establecer con su
promedio una liquidación final de un contrato al que se le
ha fijado un término de duración por convenio expreso de
demandante y demandado.

En relación con lo anterior, la prueba también demuestra
que no puede haber error en la interpretación del contrato en
cuanto a su duración. La cuenta corriente que el deman-
dante produjo el 28 de abril de 1921 al demandado, pone de
relieve que al mismo tiempo, que en el curso del primer año
del contrato, el demandado cumplía debidamente, entregando
todas sus cañas, preparando su cosecha para el siguiente año,
así también el demandante cumplía sus obligaciones recí-
procas habiendo hecho diversas entregas de dinero al deman-
dado para el cultivo de sus cañas, las que acabadas de cortar
quedaban las raíces (retoños) que necesariamente había
que atender y cultivar para cosecharlas el segundo año del
contrato.

El contrato se firmó el 1°. de mayo de 1920 para tener
efecto en las zafras de 1920–21, 1921–22 y 1922–23. El de-
mandado debía sembrar y cultivar 18 cuerdas de cañas en
cada año y recibiría en concepto de refacción la cantidad
máxima de $540 por año ($30 por cuerda). El primer año
el demandado entregó cañas al demandante por valor de
$1,052.79 y de febrero a abril de 1921 del mismo año, dicho
demandante hizo diversos anticipos al demandado para el
segundo año, los cuales constan en la cuenta corriente, de
28 de abril de 1921, en la siguiente forma:

| | | |
|---|---|---:|
| 1921. | Feb. 26 a efectivo su vale para 1922 | $12. 00 |
| | Feb. 26 a efectivo su vale para 1922 | $30. 00 |
| | Marzo 5 a su vale cultivo 1922 | $15. 00 |
| | Marzo 5 a su vale cultivo 1922 | $35. 00 |
| | Marzo 12 a su vale cultivo 1922 | $15. 00 |
| | Marzo 12 a su vale cultivo 1922 | $25. 00 |

Marzo 19 efectivo_____ $25.00
Abril 2 a su vale cultivo 1922_____ $12.00
Abril 3 a su vale cultivo 1922_____ $30.00
Abril 9 a su vale cultivo 1922_____ $12.00
Abril 9 a su vale cultivo 1922_____ $28.00
Abril 16 a efectivo su vale_____ $38.00
Abril 23 a su vale efectivo_____ $20.00

Estas diversas partidas ascienden a la suma de $297. De este modo se puede ver la intención clara y manifiesta de las partes en relación con la duración del contrato para el caso que ofreciera duda la cláusula expresa que lo extiende al término de tres años. El último anticipo al demandado para 1922 data de abril 23 1921, y el 30 de mayo de 1921, el demandante establece la demanda de este caso, dando por terminado el contrato, bajo la errónea interpretación de que simplemente se trataba de una cuenta corriente y exigible el saldo por la sola liquidación de la misma y así el contrato quedaba al arbitrio del demandante para cumplirlo. Véase artículo 1223 del Código Civil.

Por otra parte, es usual en las transacciones de cañas, entre centrales y colonos, celebrar los contratos sobre refacción y molienda de cañas por más de un año. Es cierto que el cultivo de la caña es de un año para otro, a excepción de la siembra de gran cultura en que la cosecha tarda mas de los doce meses, pero durante el primer año, cualquiera que sea la clase de siembra, el agricultor sufre con más rigor el peso de los gastos de los que siempre espera resarcirse con creces en las cosechas sucesivas, donde según las condiciones del terreno, los beneficios aumentan por exigir menos el cultivo de los segundos y subsiguientes cortes (retoños). El hecho mismo de cosecharse la caña, en general cada año, es natural que imponga en los contratos de refacción y molienda por varios años, a falta de condiciones expresas, que se haga una liquidación al final de cada zafra demostrativa de la situación del negocio de las partes contratantes. En este caso era lo más lógico que se hiciera tal liquidación por el demandante

y ver si era prudente seguir facilitando dinero al demandado
para el segundo año, cuando ya lo calculado para refacción,
según el contrato, lo había concedido en exceso el deman-
dante; y asimismo era beneficioso al demandado para cono-
cer el valor de sus entregas y si el precio estaba de acuerdo
con las cotizaciones del mercado. La liquidación así practi-
cada podíamos llamarla provisional en atención a que no fi-
nalizaba el contrato, y por tanto, no era exigible el saldo,
salvo que se hubiese previsto el caso en el contrato. Si el de-
mandante se había excedido en sus avances al demandado,
arrojando la cuenta del primer año mayor cantidad que la
suma que estaba obligado a refaccionar, la culpa de esto a él
solamente le era imputable y seguramente lo hizo calculando
el mayor producto de las cañas del demandado, cuya total
entrega ascendió casi al doble de la refacción.

No obstante todo lo expuesto, parece que el verdadero
motivo de la presente reclamación y del que se hace mención
en el alegato del apelado, es que el demandado después de
haber celebrado el 1º. de mayo de 1920 su contrato con el de-
mandante sobre refacción y venta de cañas, hipotecó el 22
de junio de 1920 a un tercero la finca en donde radican las
cañas contratadas al demandante. El apelado sostiene que
ese hecho es una infracción de la cláusula 8ª. del contrato de
refacción y que hacía perder el plazo al demandado, si era
que le favorecía.

La prohibición de la cláusula 8ª. se refiere claramente a
las cañas, pero no al fundo de la finca. Además, el derecho
del demandante estaba protegido por la ley sobre contratos
de refacción agrícola y molienda de cañas y para otros fines
aprobada en marzo 10 de 1910, enmendada según la ley de 9
de marzo de 1911.

Por la sección 4ª. de dicha ley se establece la preferencia
a que tiene el acreedor en cuanto a los frutos de la finca
refaccionada y durante los años comprendidos en el con-
trato desde la fecha de su presentación en el registro.

Por la sección 7ª. se declara que los contratos a que se refiere la ley, serán anotados, en el registro de contratos agrícolas, a instancias de cualquiera de las partes contratantes, y por la sección 8ª. se determina que las anotaciones así practicadas perjudicarán y obligarán a tercero y si después del registro de tal contrato, las cañas o el dominio del terreno sobre el cual dichas cañas están sembradas, fuese traspasado, el cesionario quedará obligado a cumplir todas las obligaciones del contrato tan completamente y en la misma forma y en el mismo grado como la parte interesada en dicho contrato que hizo tal traspaso o que tenía el interés transferido; pero sin que el traspaso releve a cualquiera parte de la obligación o responsabilidad en dicho contrato.

No aparece incumplido el contrato de 1º. de mayo de 1920 por el demandado, y en virtud de todo lo expuesto, la sentencia de la corte inferior debe ser revocada y dictarse otra declarando sin lugar la demanda sin especial condenación de costas.

*Revocada la sentencia apelada y declarada*
*sin lugar la demanda, sin costas.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Wolf disintió.